397 A.2d 1173

**COMMONWEALTH of Pennsylvania**

v.

**Kevin VAN CLIFF, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 16, 1978.

Decided Jan. 24, 1979.

Reargument Denied March 1, 1979.

Nino V. Tinari, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., William C. Turnoff, Philadelphia, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

 Appellant Kevin Van Cliff was tried before a jury and convicted of murder of the first degree, aggravated robbery, and conspiracy in connection with the slaying of Howard Anderson. Post-verdict motions were denied and appellant was sentenced to life imprisonment on the murder bill and a concurrent term of five to fifteen years imprisonment on the aggravated robbery charge. Sentence was suspended on the conspiracy conviction. Appellant appeals only from the judgment of sentence for murder.[1] Appellant contends that certain comments made by the prosecuting attorney in closing argument were so prejudicial as to deny appellant his right to a fair and impartial trial and that appellant's oral and written inculpatory statements were inadmissible products of unnecessary delay between arrest and arraignment. These claims are without merit and we affirm.[2]

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1978–79).

2. Appellant also claims that his rights under the Confrontation Clause of the sixth amendment to the United States Constitution were violated when he was denied permission to cross examine a Commonwealth witness on the witness's juvenile arrest record. Appellant filed boilerplate post-verdict motions on September 24, 1974, prior to this Court's decision in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). The trial court, sitting en banc, heard the motions and wrote an opinion addressing the two issues we now reach on the merits, but did not address itself to the third claim appellant raises on appeal. Appellant has not included in the record any brief or memorandum supplementing post-verdict motions or a transcript of the post-trial hearing. It must therefore be concluded

580

I

Appellant was arrested in his home at 7:10 p. m. on December 10, 1972. Police took appellant to the Police Administration Building and placed him in an interrogation room. Appellant sat in the room with his uncle from 7:35 until 8:30 when police entered to obtain preliminary information. At 8:45, appellant was given *Miranda* warnings. Appellant then made an oral inculpatory statement which he completed at 9:45. The police gave appellant a polygraph examination from 10:21 until 11:15. At 11:25, after again receiving *Miranda* warnings, appellant made a formal statement in which he reiterated his prior oral statement. The statement was completed at 12:25 p. m. on December 11, 1972. After he read the statement into a tape recorder,[3] appellant was placed in a cellroom for the night. He was arraigned at 10:00 p. m. on December 11.

At trial, Commonwealth witnesses testified that on December 6, 1972, appellant Van Cliff and four other youths (Terry Purdie, Fred Young, Al Gilmore, and Paul Hayes) were in a luncheonette at 28th and Wharton Streets in Philadelphia when Howard Anderson entered. Two of the boys decided to "get" Anderson and told the others of their plan. When Anderson left the luncheonette all five youths followed him, passed him, and waited around the corner of 28th and Titan Streets. As Anderson turned the corner, Young told him to give up his money. Purdie hit Anderson after which appellant and Young kicked him. Gilmore then fatally stabbed Anderson.

The central issue at trial was whether appellant had entered into the conspiracy. Appellant testified that he neither entered into an agreement to rob Anderson nor participated in the crime in any manner. Although he was

that this issue was not raised either in writing or orally before the trial court sitting en banc. This allegation of error has been waived and we will not address its merits. See *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978); *Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503 (1978). Cf. *Commonwealth v. Blair*, supra.

3. The tape recorded statement was held inadmissible at the pre-trial suppression hearing.

in the luncheonette at the same time as the other youths, appellant testified that he was not with them. According to appellant, he was frightened of the other youths who were members of a gang which had threatened him in the past. Appellant testified that he was walking between Anderson and the others when he left the luncheonette and, in his attempt to run away from the others, may have accidentally kicked Anderson as he was passing him on the sidewalk. Only after he had gotten away did the others attack Anderson.

Appellant cried on a number of occasions during the seven day trial. In his closing remarks, the assistant district attorney argued that the jury should not reach their verdict on the basis of sympathy for appellant. He concluded that portion of his summation with the following statement:

"You all know in your hearts what must be done in this case. It is not an easy thing to be a juror. No one ever said it would be an easy job. It is a tough job. It's tough standing up and saying guilty especially in a murder case, because all you see is the defendant. You don't see the victim. We all know where the victim is. I can't bring him before you to generate sympathy for him."

At trial, appellant claimed that the statements admitted into evidence as the statements he had given police were not his exact words but had been altered to incriminate him. In closing argument the district attorney responded:

"You heard testimony, also ladies and gentlemen—rather the commentary of Mr. Tinari [defense counsel] with regard to the reading of the statement and how words were changed around. Let me say this to you, if the police were really going to change the testimony, if they were going to change the statement to put words in the statement that would hurt Mr. Van Cliff, do you think they would have stopped short of what is in there? Why didn't he just go ahead and bury him? Why didn't they attribute it to Kevin Van Cliff, the stabbing? If they are going to lie about something, ladies and gentlemen, they are going all the way. Do you think there are shades of

variation in lies they perpetrate? Do you think that's the kind of case we have put on before you? The witnesses— the officers have been on the police force for a long time—"

The assistant district attorney continued:

"Ladies and gentlemen, Mr. Tinari had much to say about his character witnesses, and he said about me asking about their relatives and all. Well, I think it is relevant. I think that you should know that all of these people who came before you are all relatives of the defendant. I think that's relevant. There weren't any members of the community who were not relatives who came forward and testified as to his quote 'good character.' And suffice it to say, ladies and gentlemen, that although good character evidence is substantial evidence, that that kind of evidence could have been offered on behalf of any criminal—

MR. TINARI: Objection.

MR. CANNON: —before they committed their first crime."

Defense counsel made timely objection to each of the above-quoted remarks. In conjunction with each objection, defense counsel also requested a mistrial but did not request cautionary instructions.

## II

"[C]omments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. McNeal*, 456 Pa. 394, 400, 319 A.2d 669, 673 (1974) (citations omitted). "[W]hether this standard has been violated by the language of the district attorney is not in the first instance our decision to make. It is the duty of the trial judge to rule upon the comments; this Court is limited in its review to whether the trial court abused its discretion." *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). "We recognize that a

district attorney must have reasonable latitude in fairly presenting a case to the jury, and that the trial judge must have reasonable discretion in deciding whether the bounds of propriety have been exceeded." *Commonwealth v. Cronin*, 464 Pa. 138, 143, 346 A.2d 59, 62 (1975).

■ This Court has adopted Section 5.8 of the ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft, 1971) [hereinafter ABA Standards][4] to serve as a guideline for determining when in closing argument a prosecutor has overstepped his responsibility to present "a disinterested, impartial and fair assessment of the testimony that has been presented." *Commonwealth v. Harvell*, 458 Pa. 406, 411, 327 A.2d 27, 30 (1974). In determining whether the established bounds of propriety have been exceeded in closing argument, we must be ever mindful of the "possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige associated with his office, but also because of the fact-finding facilities presumably available to him." ABA Standards § 5.8, Commentary at 126–27. The remarks of which appellant complains fall on the borderline of permissibility. It cannot be concluded, however, that their impact on the jury was so prejudicial as to require the trial court to grant a mistrial.[5]

■ Appellant contends that the prosecutor's reference to the fact of the murder victim's death and the victim's physical absence from the courtroom was prejudicial because it distracted the jury's concentration from the issue of whether appellant entered into a conspiracy to beat and rob the victim. This Court has held improper and prejudicial references to the "victim" which point out more than the obvious fact that the victim is dead and instead raise facts

4. E.g., *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978); *Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977); *Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976).

5. This is not to say that cautionary instructions may not have been appropriate if defense counsel had requested them.

and considerations outside the evidence developed at trial. In *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974), the prosecutor introduced "unsworn testimony of the victim" in his closing argument. This Court held the argument "exceeded the bounds of propriety and constituted an appeal to the passions and prejudices of the jury." Id. at 528, 317 A.2d at 207. The prosecutor in *Lipscomb* also told the jury that the only way they could find the defendant not guilty was if the victim walked through the courtroom door. We held the comment constituted reversible error because it violated the rule that a prosecuting attorney may not indulge in personal assertions of guilt of a defendant either by direct statement or by indirect figure of speech. Accord, *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975); *Commonwealth v. Lark*, 460 Pa. 399, 333 A.2d 786 (1975).

The assistant district attorney's reference to the victim in this case was not a personal assertion of belief in appellant's guilt. Nor was it likely to inflame the passions and prejudices of the jury as would "unsworn testimony" describing in vivid detail the circumstances of the victim's untimely death. Moreover, when viewed in the overall context of the defense and prosecution closing arguments and the trial court's instructions to the jury, it is clear that the prosecuting attorney was attempting to meet defense counsel's impassioned appeal to the jury to show sympathy for appellant. See *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977). Compare *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978) (where prosecutor made remarks indirectly conveying his personal belief concerning critical issues and placed unnecessary emphasis on involvement of drugs, the remarks "exceeded that which was necessary to effective rebuttal"). We cannot conclude the remark prejudiced and inflamed the jury or prompted the jury to act out of sympathy for the victim.[6] Compare, e. g., *Commonwealth v. Mikesell*, 475 Pa. 589, 381 A.2d 430 (1977) (prosecutor asked jury to show sympathy for orphaned children of the vic-

---

6. Our determination based on this record should not be read as expressing approval of the remarks as models to be followed in every case.

tims); *Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977) (prosecutor asked jury to place themselves in victim's shoes).

Appellant also contends that the assistant district attorney's comments regarding the police testimony and the accuracy of their transcriptions of appellant's confessions were improper and prejudicial. He argues that the prosecuting attorney "clearly told the jury that the police are truth tellers and inferentially, that Mr. Van Cliff is a liar where his testimony contradicts the police officers," in violation of Section 5.8(b) of the ABA Standards. The remarks set forth factors for the jury to consider when it decided whether the inculpatory statements introduced at trial had been fabricated by the police. The comments neither explicitly nor implicitly revealed the prosecuting attorney's personal opinion as to the truth or falsity of the police testimony. Compare *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974) (prosecutor told jury defense counsel did not believe certain defense testimony); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971) (prosecutor characterized defendant's testimony as a "malicious lie").

Appellant next contends that the portion of the assistant district attorney's closing argument addressed to appellant's character witnesses raised impermissible adverse inferences. In support of this argument, appellant cites *Commonwealth v. Lipscomb*, supra, where the prosecuting attorney severely criticized the defense's character testimony, specifically asking why the accused's minister had not been called and why the witnesses had not been asked about the accused's reputation in the community. *Lipscomb* held that these remarks went far beyond the range of permissible comment on the quality of character testimony and asked the jury to infer bad character and guilt because only certain witnesses had been called and particular individuals had not testified.

On this record, we must conclude that the prosecuting attorney's remarks did not reach the level of prejudice found

in *Lipscomb.* The remarks addressed the impact and quality of appellant's character testimony and permissibly pointed out that relatives are more likely to be biased or interested in the outcome of a case than are nonrelatives. Bias and interest of witnesses are of course proper areas of impeachment and go to the weight the jury should give certain testimony. See generally, McCormick, Evidence, § 40 (2d Ed. 1972). The jury merely was encouraged to view appellant's character testimony with a critical eye rather than to conclude that appellant's character was necessarily bad.

Finally, appellant argues that the prosecuting attorney impermissibly stated by inference that appellant was a criminal when he said "that kind of evidence could have been offered on behalf of any criminal before they committed their first crime." "[A] prosecuting attorney may not indulge in personal assertions of guilt of a defendant either by direct statement or indirectly by figure of speech." *Commonwealth v. Cronin,* 464 Pa. 138, 143, 346 A.2d 59, 62 (1975). Accord, *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977). Nor may the prosecuting attorney unfairly characterize and stigmatize the defendant. See, e. g., *Commonwealth v. Gilman,* supra (prosecutor called defendant "cold-blooded killer" and characterized him as "sly, calculating and deceiving"); *Commonwealth v. Lipscomb,* supra (prosecutor called defendant "hoodlum" and "animal"); *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936) (prosecutor pointed to defendant and referred to him as "cold-blooded killer").

■■ The assistant district attorney's remark in this case was stated in general terms and, read in context, merely drew an inference that the jury should give little weight to appellant's character evidence because it was of a type that any criminal defendant on trial for his first offense could easily present. The prosecuting attorney did not characterize appellant as a criminal. Nor did the statement imply the prosecuting attorney believed appellant was guilty merely because he had introduced character testimony of this nature. We cannot say that on this record the prosecutor's

reference to "any criminal" was so inflammatory and prejudicial as to require a new trial.[7]

## III

At a pre-trial motion to suppress, in post-verdict motions, and on appeal, appellant has maintained that his oral and formal inculpatory statements were secured in violation of Pa.R.Crim.P. 130 and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972).[8] In *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974), this Court established a three-pronged test to determine when evidence has been obtained in violation of *Futch*: (1) the delay must be unnecessary; (2) the evidence must be prejudicial; and (3) the evidence must be reasonably related to the delay.

Although appellant was not arraigned until approximately fifteen hours after his arrest, the only delay with which we are here concerned is the two and one-half hour period between appellant's arrest and the completion of his oral statement. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974). It cannot be concluded that the initial short delay, primarily administrative in nature, contributed to appellant's confession. *Commonwealth v. Boone*, 467 Pa.

---

7. Near the end of his closing argument, the assistant district attorney told the jury:

 "Ladies and gentlemen, you have been very patient with me. I appreciate it very much. I know from my experience with juries that you all want to do a good job. I know you'll try very hard to do that and I have full confidence that the verdict that you return will reflect the facts in this case and the law. I ask you to say the kind of savage violence that was perpetrated upon Howard Anderson in this case will not be tolerated."

 Appellant contends that the assistant district attorney's reference to "savage violence" was prejudicial and when viewed in conjunction with the reference to "any criminal" requires a new trial be granted. Appellant did not present this contention to the post-verdict court. It therefore has been waived. See supra note 2.

8. Appellant was arrested before May 16, 1977, the effective date of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), which held any statement obtained after arrest but before arraignment inadmissible where the accused is not arraigned within six hours of arrest.

168, 354 A.2d 898 (1975); *Commonwealth v. Abner*, 460 Pa. 321, 333 A.2d 747 (1975). Moreover, since appellant's subsequent written confession, obtained five and one-half hours after arrest, was a reiteration of his oral confession, its admission was not prejudicial. *Commonwealth v. Boone,* supra; *Commonwealth v. Abner,* supra; *Commonwealth v. Davis,* 460 Pa. 644, 334 A.2d 275 (1975); *Commonwealth v. Rowe,* supra.

Judgment of sentence affirmed.

Mr. Justice O'BRIEN and Former Justice POMEROY did not participate in the decision of this case.

POMEROY, former J., did not participate in the decision of this case.