J-S16043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FREDERICK HALL | : | |
| | : | |
| Appellant | : | No. 1528 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 7, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003679-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FREDERICK HALL | : | |
| | : | |
| Appellant | : | No. 1529 EDA 2022 |

Appeal from the Judgment of Sentence Entered April 7, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004952-2020

BEFORE:  DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED OCTOBER 19, 2023**

Frederick Hall (Appellant) appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas after a jury convicted him at two criminal dockets of one count each of robbery, strangulation, theft by unlawful taking, simple assault, and driving under the influence (DUI) —

general impairment, and two counts of witness intimidation.[1] On appeal, he challenges the sufficiency of a curative instruction regarding four phone calls presented by the Commonwealth at trial. He also raises a claim that the trial court erroneously limited the scope of Appellant's cross-examination of a witness. We affirm.

We glean the underlying facts of this matter from the trial court's opinion:

> On June 12, 2020, [Falicia Stroye (Victim)] was finishing a [12] hour overnight shift as a Licensed Practical Nurse at Jefferson Bucks Hospital. Her shift ended at 7:00 a.m. and she was heading home to her apartment [on] Plaza Boulevard[ in] Morrisville, Bucks County, Pennsylvania. On her way home, [she] texted . . . her boyfriend, Appellant[. Victim] recognized he was drunk again and told him not to come to her apartment.

> Despite this admonishment, [Victim] saw Appellant . . . sitting in his burgundy Ford pick[-]up truck at the top of the hill near her apartment. Appellant . . . followed [V]ictim to her apartment where he used his truck to block her in a parking spot. Appellant . . . jumped out of his truck and opened the door to [V]ictim's car before she could lock it. Appellant . . . then began swinging his fists and striking [V]ictim in her head and face. [V]ictim was wearing a stethoscope from work around her neck. Appellant . . . used the stethoscope to choke [V]ictim. Her shirt was ripped. [Appellant] also used a sun visor from [Victim's] car to strike her repeatedly about the face and head.

> Appellant . . . was using both open and closed fists to strike [V]ictim. However, during the assault, [V]ictim was able to remove mace from her pocketbook and spray Appellant . . . in the face. This interrupted the attack and [V]ictim dialed 9-1-1 for help[, but the call was "immediately disconnected before a 911

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(iv), 2718(a)(1), 3921(a), 2701(a)(1); 75 Pa.C.S. § 3802(a)(1); 18 Pa.C.S. § 4952(a)(6), respectively.

operator answered the call."[2]]  Appellant . . . grabbed [V]ictim's phone and keys before fleeing the scene.  As he left, Appellant . . . said "I'm going to kill you and your whole family."

Morrisville Borough [Police Corporal William Smith and Officer Erica McIntyre] responded to [V]ictim's apartment to investigate the abandoned 9-1-1 call.  They met with [V]ictim who described the assault.  [Corporal Smith] passed Appellant['s] vehicle while driving to [V]ictim's apartment.  [He] immediately left the scene to try to find Appellant . . . or his vehicle.  [Officer McIntyre] stayed with [V]ictim[ and] described [her] injuries:

> [Victim] had various injuries about her face and neck. Around her neck there [were] red marks.  On her face[,] her left ear had blood coming out of it.  [There was blood on her nostril.[3]]  There was a knot above her eye on her forehead. There was a knot on her chin as well as her cheekbone area.

\* \* \*

[Corporal Smith] found [Appellant's] truck parked approximately five . . . miles away.  The truck was running and Appellant . . . was sitting in the driver's seat.  [Corporal Smith] approached Appellant . . . and noted he had pepper spray on him. [Corporal Smith] also noted Appellant . . . had a heavy odor of [alcohol] about his person and that he was unsteady on his feet. Appellant . . . was irritated and non-cooperative.  He was placed under arrest.  [Officer McIntyre arrived at the scene to aid Corporal Smith and] recovered [V]ictim's cellphone and keys from Appellant['s] truck and . . . returned [them] to [V]ictim.  [V]ictim immediately noticed that records of text messages and phone calls between her and Appellant . . . had been deleted.

Trial Ct. Op. 10/31/22, at 1-3 (some paragraph breaks inserted & record citations omitted).

---

[2] N.T. Jury Trial, 3/3/22, at 7.

[3] N.T., 3/3/22, at 50.

Appellant was arrested that same day. At Criminal Docket CP-09-CR-0003679-2020 (Docket 3679), he was charged with two counts of robbery, and one count each of strangulation, terroristic threats, theft by unlawful taking, receiving stolen property (RSP), simple assault, DUI — general impairment, possession of an instrument of crime (PIC), and operation of a vehicle without ignition interlock.[4]

Appellant was held at the Bucks County Correctional Facility, and "[a]bout a week after this incident [he] mailed two . . . separate letters from the [Facility] to [V]ictim requesting her not to appear in court." Trial Ct. Op. at 3. Appellant also made "approximately [165] intercepted prison phone calls" to Victim. *See id.* In some of these phone calls, Appellant asked Victim "to not come to court or testify against him." *Id.* Based on the above conduct, Appellant was charged with two counts of witness intimidation at Criminal Docket CP-09-CR-0004952-2020 (Docket 4952).

On February 16, 2021, the Commonwealth filed a motion to consolidate Dockets 3679 and 4952 for trial.[5] The trial court held a hearing on September

---

[4] 18 Pa.C.S. §§ 3701(a)(1)(iii), 2707(a)(1), 3921(a), 3925(a), 907(a), and 3808(a)(1), respectively.

[5] Appellant was also charged at an additional docket, CP-09-CR-0003684-2020, with one count each of operation of a vehicle without ignition interlock and operating a vehicle while license was suspended, related to DUI for an incident that occurred on January 23, 2020. *See* N.T. Sentencing, 4/7/22, at 6-8. The Commonwealth did not seek to consolidate this matter with Dockets 3679 and 4952 for trial; however, Appellant pleaded guilty to these charges on April 7, 2022, the same day he was sentenced for his convictions at Dockets 3679 and 4952.

8th, where the Commonwealth clarified it charged Appellant with two counts of witness intimidation based upon two letters he sent Victim while incarcerated, which it planned to present at trial. *See* N.T., 9/8/21, at 26-27. The Commonwealth also stated that it sought to admit some of the phone calls Appellant made to Victim while incarcerated to provide "context" for the two counts of witness intimidation. *See id.* at 27-29. The court directed the parties to come to an agreement as to which phone calls the Commonwealth would introduce at trial. *See id.* at 31.

On September 16, 2021, the trial court granted the Commonwealth's motion to consolidate Dockets 3679 and 4952 for trial. Order, 9/16/21. This matter proceeded to a two-day jury trial on March 2, 2022, where Victim, Corporal Smith, and Officer McIntyre testified. Relevant to Appellant's claims on appeal, the Commonwealth played portions of four of the intercepted prison phone calls. N.T. Jury Trial, 3/2/22, at 89-92. The jury was not aware that Appellant was incarcerated while making the phone calls. We note the parties had entered into a stipulation, which was read to the jury, that Appellant made phone calls to Victim, which were intercepted and recorded, and the recordings were redacted, but fair and accurate copies of the calls. *Id.* at 86-88. On cross-examination, Appellant asked Victim if the four phone calls "represent[ed] an extremely small portion of" the approximately 165 phone calls. *See id.* at 103. The Commonwealth objected, stating this line of questioning "suggest[ed]" Appellant spoke to Victim about not coming to court only in those four calls, which was "not accurate." *Id.* at 103-04. The

Commonwealth argued Appellant's counsel was "opening the door to more phone calls being played." *Id.* at 104. The court sustained the objection and gave the jury a curative instruction, explaining that while Appellant's questions implied "there may not have been other conversations regarding not coming to court[,]"the evidence was a "fair cross representation" of the calls. *Id.* at 112.

The Commonwealth also presented Officer McIntyre's body camera footage, depicting a conversation immediately after the incident on June 12, 2020, where the officer told Victim that Appellant would go to jail that day. *See* Trial Ct. Op. at 13-14. Officer McIntyre also explained that she did not know when Appellant would be released, and it would depend upon his ability to make bail. *Id.* Appellant then informed the trial court he wished to cross-examine the officer about the fact that he was incarcerated from the time of his arrest until trial. N.T., 3/3/22, at 69. However, the court ruled Appellant could only ask if Appellant was transported to the Bucks County Correctional Facility that day. *Id.* at 84-85. Appellant did not testify or present evidence on his own behalf.

At the conclusion of trial, the jury found Appellant guilty at Docket 3679 of one count each of robbery, strangulation, theft, simple assault, and DUI —

general impairment.[6]  At Docket 4952 the jury found him guilty of both counts of witness intimidation.

On April 7, 2022, the trial court imposed an aggregate sentence of four to eight years' incarceration at Docket 3879.  At Docket 4952, the court sentenced Appellant to a term of four to eight years' imprisonment, to run concurrently to the sentence at Docket 3879.

On April 18, 2022, Appellant filed a post-sentence motion to reconsider his sentence, arguing it was "excessive[.]"[7]  Appellant's Moton to Modify & Reconsider Sentence, 4/18/22, at 2 (unpaginated).  He also requested the trial court to hold a hearing.  *See id.*  Before ruling on this motion, the court filed an order, stating that "by agreement of the parties," Appellant shall receive credit for time served since June 12, 2021.  Order, 4/22/22.  Because this order was filed within 30 days of the imposition of sentence, we consider it to be an amended judgment of sentence.  *See* 42 Pa.C.S. § 5505 ("[A] court

---

[6] The trial court noted in its opinion Appellant was not convicted of robbery.  *See* Trial Ct. Op. at 4.  However, the verdict reflects he was found not guilty of one count of robbery under Section 3701(a)(1)(iii), and convicted of one count under Section 3701(a)(1)(iv).  *See* N.T., 3/3/22, at 209-10.

[7] Appellant's sentence was imposed on April 7, 2022.  The tenth day after sentencing fell on a Sunday, and thus, Appellant had until the next business day to file a timely motion.  *See* 1 Pa.C.S. § 1908 (for computations of time, if the last day of any such period shall fall on a Saturday, Sunday, or on a legal holiday, that day shall be omitted from the computation); Pa.R.Crim.P. 720(A)(1) (written post sentenced motions must be filed within 10 days of sentencing).  Therefore, Appellant's post-sentence motion, filed Monday, April 18th, was timely.

upon notice to the parties may modify or rescind any order within 30 days after its entry . . . if no appeal from such order has been taken or allowed."). On May 4th, the trial court entered a second order, denying Appellant's request for a hearing.  Order, 5/4/22.

Appellant filed timely, separate notices of appeal at each docket[8] and complied with the trial court's order to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[9]  He raises the following claims for our review:

> A. Did the trial court err in giving an improper curative instruction regarding the phone calls from Appellant to [Victim]?
>
> B. Did the trial court err in refusing to allow Appellant to cross-examine Officer McIntyre regarding Appellant's incarceration?

Appellant's Brief at 9.

---

[8] On November 28, 2022, this Court *sua sponte* consolidated Appellant's appeals.  Order, 11/28/22.

[9] The trial court's Rule 1925(b) order does not appear in the certified record. However, the criminal docket reflects that the court granted Appellant an extension to file his Rule 1925(b) statement, and this order was served upon him on September 26, 2022.  Appellant filed his statement on September 29th.  **See** Docket 3679 at 25; Docket 4952 at 23.  Neither the court nor the parties raise concerns as to the timeliness of Appellant's Rule 1925(b) statement.

We further note Appellant raised two additional claims in his Rule 1925(b) statement: (1) the trial court erred in consolidating Dockets 3679 and 4952 for trial; and (2) the trial court gave an improper jury instruction regarding witness intimidation.  **See** Appellant's Statement of Matters Complained of on Appeal, 9/29/22.  He abandons these claims on appeal.

- 8 -

In his first claim, Appellant argues the trial court gave an improper curative instruction to the jury regarding the contents of the intercepted prison phones calls played at trial. Appellant's Brief at 12. As discussed above, the Commonwealth presented portions of four of the phone calls made by Appellant to Victim. Before the phone calls were played, the trial court read the following stipulation, made by the parties, to the jury:

> [Appellant] called [Victim] and spoke with [her]. The phone calls were intercepted and recorded. The intercepted phone calls are fair and accurate copies of the intercepted phone calls, with portions redacted pursuant to pretrial rulings from [the trial court].

N.T., 3/2/22, at 87-88. The Commonwealth then played the portions of the four phone calls for the jury. *Id.* at 89-92.

On Appellant's cross examination of Victim, the following exchange occurred concerning the phone calls:

> [Appellant's counsel]: So over the course of 160 phone calls, at 10 to 15 minutes or so, rough low estimate, a piece, that represents an extremely small portion of those phone calls. Is that fair to say?
>
> [Commonwealth]: Objection, Your Honor. . . .
>
>              \*     \*     \*
>
> (Whereupon, the following discussion was held at sidebar)
>
> [Commonwealth: T]here are numerous redactions that were made in anticipation of [the trial court's] rulings, in addition to a redaction that [the court] ordered. I think that [Appellant's] counsel's questions right now are trying to suggest that the only time [Appellant] said something about getting help or not coming to court is what we've heard, which we all know is not accurate.

I think that [Appellant's] counsel is opening the door to more phone calls being played.

Minimally[,] I would ask [the trial court] to give an instruction that [it] approved what was being played and [it] ordered redactions in this case[.] I think the Commonwealth is being prejudiced right now by the implication that we're hiding other phone calls that [the court] ordered couldn't come in or that we all agreed that I wouldn't reference him being in jail, all these other things, and so I would ask minimally for a curative instruction.

But also[,] I would ask potentially to play additional portions of phone calls with this line of questioning.

&ast; &ast; &ast;

[Appellant's counsel]: I respectfully disagree. I think what I'm getting at here is completely different than what [the Commonwealth] thinks that I'm trying to get at.

What I'm trying to get at here is we're talking about portions of phone calls that are this big, but, in fact, there [are] 160 phone calls that are made between . . . the two individuals, and that in those phone calls they talk about a variety of other things including, I've already referenced, the relationship.

My point is just to make that this is just a small portion of those phones calls that . . . have been played.

[Trial court]: The objection is sustained. The clear implication is . . . that the four calls were the only calls that had anything to do with . . . threatening or intimidation of a witness, and they have been redacted, and I think that you're opening the door for her to bring in every other phone call to prove. I mean you're saying [these are] the only times he said anything, and these are love letters,[10] and this is, and that's not what's true.

&ast; &ast; &ast;

_____

[10] Appellant's counsel referred to the two letters, which were the basis for the witness intimidation charges, as "love letters." *See* N.T., 3/2/22, at 97.

- 10 -

[Trial court:] The remedy is [Appellant's counsel] either [ends that line of questioning] or we listen to 165 phone calls. . . .

\*     \*     \*

[The court's] concern is the point that you are clearly making is that only four phone calls even contain mention of not coming to court. I don't know. I didn't listen to the 165 phone calls, but according to the Commonwealth, it's mentioned in a lot of them. If so, [the Commonwealth is] going to be permitted to play them if you are going to make the —

\*     \*     \*

[argument] that that's all that exists.

\*     \*     \*

[Trial court]: I will give a cautionary instruction unless you want to continue [with this questioning]. I'm not trying to limit you.

[Appellant's counsel]: I understand.

N.T., 3/2/22, at 103-09.

The trial court then gave the following curative instruction:

Ladies and gentlemen of the jury, prior to today's trial we've had pretrial hearings in this matter, specifically concerning what evidence gets presented to the [c]ourt. And there have been a significant number of phone calls that have been intercepted. You heard four. You could hear all 165 of them. You'd probably be banging your head against the wall if I made you listen to 165 because that's what I was doing when I was listening to them[.]

They are all very similar in the sense that you heard [Appellant and Victim] discuss many things within the phone call. We've picked and limited it to these.

However, [Appellant's counsel] has stated . . . that there may not have been other conversations regarding not coming to court. I don't believe that to be accurate in the phone calls. I think that this is a fair cross representation of those phone calls,

- 11 -

and they were ones that I decided should be heard in court, and I limited the Commonwealth from presenting many more of those because you hear the quality of the conversation, and it's not like they're crystal clear and you can clearly hear. All of them are that way.

So that's the reason for the ruling. . . . And you should not consider that there are only four calls that mention anything about not coming to court. . . .

N.T., 3/2/22, at 111-12 (paragraph break inserted).

Returning to Appellant's argument, he avers the above curative instruction was improper. Appellant's Brief at 13. First, he states that the instruction referenced the remaining phone calls, which were not admitted into evidence, and thus "created a great risk of confusing the jury." *Id.* Specifically, he argues the jury was instructed that in the remaining phone calls, Appellant told Victim "not to come to court." *Id.* Next, he contends this suggested the Commonwealth had evidence of 165 instances of witness intimidation. *Id.* Appellant also maintains the instruction "commented on the credibility of defense counsel by instructing the jury that [his] comment [was] not accurate[.]" *Id.* at 14. He insists the court's comment "accus[ing] counsel of attempting to mislead the jury" prejudiced Appellant and deprived him of a fair trial. *Id.* at 15. We conclude no relief is due.

"[T]he decision to give curative instructions is within the sound discretion of the trial court and will not be disturbed absent manifest error." ***Commonwealth v. Ford***, 650 A.2d 433, 442 (Pa. 1994). "A trial court's curative instructions must be viewed in the context of what occurred, *i.e.,* what evidence was previously excluded and subsequently allowed, and when

- 12 -

it was allowed." ***Commonwealth v. Padilla***, 923 A.2d 1189, 1196 (Pa. Super. 2007) (emphases & citation omitted).

Further, our review of a trial court's evidentiary rulings is well-established:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Bond***, 190 A.3d 664, 667 (Pa. Super. 2018) (citation omitted).

The trial court concluded it did not err when it gave the jury a curative instruction after Appellant's line of questioning. ***See*** Trial Ct. Op. at 7. It noted, "The letters and phone calls were consistent in that they concerned the nature of the parties' relationship and its future. They also advised [V]ictim of the necessity of her not going to court or testifying against Appellant[,] or there would be no future." ***Id.*** at 11. The court determined that on cross-examination of Victim, Appellant "strongly implied" that the four phone calls were the only calls where he asked Victim not to come to court and testify, and this "was simply not true." ***Id.*** After discussing the matter with the parties, the court decided a cautionary instruction was proper and would "correct a false impression or belief." ***Id.*** at 11-12.

We agree with the trial court's determination that it did not abuse its discretion. Appellant's line of questioning implied that the remainder of the 165 phone calls did **not** include additional requests for Victim to not testify. **See** N.T., 3/2/22, at 103 (asking Victim if the four calls played only represented an "extremely small portion of those phone calls"). Appellant claimed he sought to demonstrate merely that "a small portion of those phones calls . . . have been played[,]" without any implication that the requests were only in those four calls. **See id.** at 105. We disagree with Appellant and, instead, accept the trial court's conclusions.

Additionally, the trial court's curative instruction did not prejudice Appellant. At trial, he implied that the four calls were isolated events of his requesting Victim not to attend the trial. The Commonwealth disagreed and requested a curative instruction. **See** N.T., 3/2/22, at 103-04. It was appropriate for the court to then provide an instruction, mindful of "the context of what occurred" during the cross-examination. **See Padilla**, 923 A.2d at 1196. As Appellant has failed to demonstrate that the court abused its discretion, no relief is due. **See Bond**, 190 A.3d at 667; **Ford**, 650 A.2d at 442.

In his second claim, Appellant argues the trial court erred when it did not allow him to cross-examine Officer McIntyre about the timeline of his incarceration. Appellant's Brief at 17. Relevant to this claim, the Commonwealth offered into evidence Officer McIntyre's police body camera footage from the day of the incident showing a conversation between the

officer and Victim. *See* N.T., 3/3/22, at 28-29. Appellant objected to the relevancy of all the body camera footage, but the trial court permitted the Commonwealth to present it to the jury. *Id.* at 29-31. The footage at issue showed the following conversation between Officer McIntyre and Victim immediately following the incident:

> [Officer McIntyre: Appellant will] be going to Bucks County prison today. I don't know how long he'll stay[. H]e'll have to get . . . bailed out but that's up to . . . whatever he can do.
>
> [Victim]: Can't y'all please make sure [Appellant] does not come nowhere near me?
>
> [Officer McIntyre]: Well it will be up to the Judge, the Judge will have that . . . set up that [Appellant] can't have any contact with you. If he gets out of prison . . . can I stop him from coming here? I can't. I'm not go[ing] to lie to you.

Trial Ct. Op. at 13-14.[11]

After the Commonwealth played this video, Appellant's counsel argued it "flings the door wide open to [questions about] incarceration[,]" and stated he intended to cross-examine Officer McIntyre about Appellant's incarceration. *See* N.T., 3/3/22, at 69. Specifically, counsel averred:

> [B]ased on the video evidence . . . of [Appellant] being placed into custody in the police vehicle, under arrest, in handcuffs, moved to another vehicle, and then . . . there [are] discussions . . . about [Appellant] being taken into custody [and] to the Bucks County Correctional Facility[.] I think there was testimony by Corporal Smith about [Appellant] at the hospital, how he had to be cleared

---

[11] A transcript of this conversation was not included in the trial transcript. However, the trial court partially transcribed it in its opinion. *See* Trial Ct. Op. at 13-14 n.1. The parties do not dispute the accuracy of this transcription. Copies of the body camera footage were also included in the certified record.

for incarceration[.] I think at this point I'm seeking potentially to introduce the fact that [Appellant] is incarcerated.

*Id.* at 69, 74-75. The Commonwealth noted it removed "countless phones calls" with "any reference to [Appellant] being currently incarcerated" as it was not relevant for the jury to consider. *Id.* at 77. After extensive discussion between the parties and the trial court, the court concluded Appellant could only ask the officer whether he was transported to the Bucks County facility that day. *Id.* at 69-85.

Returning to Appellant's argument on appeal, he avers he should have been permitted to cross-examine Officer McIntyre about the fact that he was incarcerated from the day of the incident through trial. Appellant's Brief at 17. He insists the video footage "opened the door" to this line of questioning, and the preclusion of it deprived him of his right to present a defense. *Id.* at 17-18. Appellant maintains that Victim's concerns about his whereabouts implied she was afraid of him, but he reasons "[t]he fact that [he] was incarcerated at the time [of the] phone calls . . . would negate this implication of fear because [Victim] had to accept each of the . . . phone calls." *Id.* at 20. Appellant claims this knowledge would have demonstrated to the jury that he knew the calls were being recorded, which was "relevant to undercut the implication that [Victim] was afraid of [him]." *Id.* at 21. In support, Appellant cites *Commonwealth v. Yale*, 249 A.3d 1001 (Pa. 2021), which he summarizes to have "expanded the enhanced state constitutional right to present a defense to include the right to present evidence." Appellant's Brief at 18.

- 16 -

Preliminarily, we conclude Appellant's reliance on *Yale* is misplaced. In *Yale*, the Pennsylvania Supreme Court held a defendant may introduce evidence of a third party's guilt if it is relevant to their defense and the prejudicial value does not outweigh the probative value. *See Yale*, 249 A.3d at 1004, 1025. While the Court highlighted the right to present a defense, its holding focused on presenting evidence of third-party guilt as a defense. *See id.* These facts are not analogous to the present matter, where there was no alleged third party involved in the incident. As such, we do not consider *Yale* governing authority.

Next, we note the trial court suggests Appellant has waived this claim when he failed to object to the content of the videos, but instead only challenged their relevancy. *See* Trial Ct. Op. at 12-14. However, Appellant responds his claim is "clearly preserved" as he "requested to explore [a topic] on cross-examination[,]" which the court did not allow. Appellant's Brief at 17 n.1. We agree that a fair reading of the trial testimony encompasses Appellant's argument on appeal. *See* N.T. 3/3/22, at 69-85. For this reason, we decline to find that Appellant waived this claim. Nevertheless, we conclude Appellant is not entitled to relief.

"The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy 'the right to confront and cross-examine adverse witnesses.'" *Commonwealth v. Rosser*, 135 A.3d 1077, 1087 (Pa. Super. 2016) (*en banc*) (citation omitted). "[T]he trial court has broad discretion regarding both the scope and permissible limits of

cross-examination. The trial [court's] exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." ***Id.*** (citations & quotation marked omitted). Additionally:

> Although the right of cross-examination is a fundamental right, it is not absolute. The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

***Id.*** at 1087-88 (citations omitted).

The trial court concluded it did not improperly limit the scope of Appellant's cross-examination of Officer McIntyre. Trial Ct. Op. at 12. It reasoned:

> [T]he question of whether, or for how long, Appellant . . . was incarcerated at the Bucks County Correctional Facility prior to trial is irrelevant to the question of his guilt. It was clearly beyond the scope of cross-examination of [Officer McIntyre]. . . .
>
> . . . [T]he testimony regarding the arrest of an individual and the procedures surrounding bail and release do not "open the door" to testimony about the length of time a person was incarcerated. Testimony involving the length of incarceration prior to trial is irrelevant. Further, [Officer McIntyre] was not the appropriate witness to be questioned on this topic.

***Id.*** at 14-15.

We agree with the trial court's conclusions. Despite Appellant's assertions, the mere facts that he was incarcerated and that Victim accepted his phone calls, do not automatically "negate" any implication of Victim's fear.

- 18 -

*See* Appellant's Brief at 20.  Even so, if Appellant were permitted to follow this line of questioning, Officer McIntyre was merely one of the arresting officers and told Victim immediately after the incident, she did not know how long Appellant would be in prison or if he was going to post bail.  *See* Trial Ct. Op. at 13.  Thus, the trial court reasonably inferred the officer was not the proper witness to question on this matter.  *See id.* at 14-15.  It was appropriate for the court to limit the scope of cross-examination to facts within the officer's knowledge.  *See Rosser*, 135 A.3d at 1087.  Appellant has not demonstrated that the trial court erred or abused its discretion, and as such, no relief is due.

As Appellant has failed to establish that the trial court committed error when it gave the jury a curative instruction regarding the phone calls or limited the scope of cross-examination to facts within Officer McIntyre's knowledge, he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/19/2023